UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WILLIAM E. ROSS,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA DEPARTMENT OF CORRECTIONS,<br>KEITH VINARDI,<br><br>Defendants. | ) | No. 2:25-cv-00260-JPH-MJD |

**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff William E. Ross is proceeding with claims under the Rehabilitation Act for damages against the Indiana Department of Correction ("IDOC") and for injunctive relief against the Warden of Wabash Valley Correctional Facility (currently Keith Vinardi). Dkt. 12 at 6-7 (screening order). Mr. Ross alleges that Wabash Valley prison officials have denied him reasonable accommodations for his partially amputated right arm in connection with his access to Wabash Valley's law library.

Mr. Ross has filed a motion for preliminary injunction requesting accommodations of (1) extra time in the law library above that usually afforded to inmates; and (2) access to a specialized keyboard for amputees such as him. Dkt. 3 at 1, 12. For the reasons below, the Court **DENIES** the preliminary injunction motion. Dkt. [3]. The Court also **DENIES** Mr. Ross's motion for reconsideration of the magistrate judge's order directing Defendants to file a response to the preliminary injunction motion. Dkt. [28].

## I. Facts and Background

Mr. Ross's right arm is amputated below the right elbow, and he has a prosthetic arm. Dkt. 3 at 5. He asserts that because of this disability, "he is unable to benefit from the Law Library service of typing legal documents for the preparation and filing of legal documents" because "[h]e is unable to type legal documents . . . as quickly as the average person in the general population." *Id.* at 2.

On March 26, 2025, Mr. Ross requested an accommodation of increased count letters that would allow him extra time to complete his legal work in the law library. Dkt. 34-1 ¶ 3 (affidavit of Craig Jones, Americans with Disabilities Act ("ADA") Coordinator at Wabash Valley). He requested two count letters per week, instead of the one count letter ordinarily afforded inmates, and four count letters per week when facing a filing deadline, instead of the ordinary two. *Id.* ADA Coordinator Jones denied the request, in part because the law library has clerks who can assist with preparation of legal work. *Id.* ¶¶ 5, 6. On June 23, 2025, Mr. Ross again requested the same accommodations, noting he had recently missed an appellate filing deadline. *Id.* ¶ 7. ADA Coordinator Jones also denied this request, stating reasonable accommodations had already been provided. *Id.* ¶ 8.

Also in June 2025, Mr. Ross was assigned to restrictive housing at Wabash Valley. *Id.* ¶ 9. Inmates in restrictive housing cannot go to the law library for safety and security reasons. *Id.* Instead, they can fill out requests for legal materials from the library and can access legal research materials in their cell

on a tablet. *Id.* It appears that Mr. Ross is still in restrictive housing at Wabash Valley. *See* https://offenderlocator.idoc.in.gov/idoc-ofs-1.0.2/ (indicating that Mr. Ross is in "Wabash Valley Long Term Segregation"). Between June 16, 2025, and March 24, 2026, the Wabash Valley law library processed 170 requests from Mr. Ross. Dkt. 34-2 (law library records).

In this case, in addition to the 8-page original complaint and 13-page preliminary injunction motion (both typed and filed on June 5, 2025), Mr. Ross has filed:

- A handwritten motion to reconsider imposition of an initial partial filing fee. Dkt. 9.
- A 3-page handwritten motion to reconsider the screening order, dkt. 15, and an 8-page handwritten motion to file a supplemental complaint, dkt. 16.
- A 3-page handwritten motion for entry of default with an attached 3-page handwritten declaration in support, and a handwritten 3-page motion to strike Defendants' opposition to the default motion. Dkts. 23-23, 25.
- A 7-page handwritten motion for reconsideration of the magistrate judge's order directing Defendants to respond to the preliminary injunction motion. Dkt. 28.
- 13 different handwritten discovery-related motions. Dkts. 29, 41, 46, 48, 52-60.
- A 24-page handwritten proposed amended complaint. Dkt. 45.

- A 23-page handwritten proposed second amended or supplemental complaint and accompanying motion. Dkt. 47.
- A 21-page handwritten reply in support of a preliminary injunction. Dkt. 51.

In its screening order, the Court noted that around the time that Mr. Ross filed his complaint in this action, he had been pursuing several appeals in state courts:

- *Ross v. Gibson Law Office*, No. 24A-CT-02799 (Ind. Ct. App.) (dismissed on February 4, 2025, because he was not appealing a final judgment or appropriate interlocutory order).
- *Ross v. Gibson Law Office*, No. 25A-CT-00896 (Ind. Ct. App.) (dismissed on July 18, 2025, because he did not timely file an appellant's brief after an extension to June 23, 2025).
- *Ross v. State of Indiana*, No. 25A-PC-00349 (Ind. Ct. App.) (dismissed on April 22, 2025, because he was not appealing a final judgment or appropriate interlocutory order).
- *Ross v. State of Indiana*, No. 25A-PC-01732 (Ind. Ct. App.) (dismissed on September 9, 2025, because it appeared a motion for relief from judgment in his state post-conviction proceeding was still pending).

In addition, the Court judicially notes that Mr. Ross has recently engaged in additional state and federal court litigation, including:

- *Ross v. Gibson et al.*, No. 2:25-cv-00612-JRS-MJD (S.D. Ind.): On December 4, 2025, Mr. Ross filed a handwritten 18-page complaint. *Id.* at

dkt. 1. After the court dismissed the case, *id.* at dkts. 13-15, Mr. Ross filed a motion to reconsider final judgment, alleging that he had not timely received the screening order, without alleging inadequate time to respond to the screening order because of his disability. *Id.* at dkt. 16. Mr. Ross timely responded to the Court's order to explain why its screening order was incorrect with a 15-page handwritten document. *Id.* at dkt. 27.

- *Ross v. Anonymous Hospital et al.*, No. 49D04-2608-CT-044496 (Marion Sup. Ct. 4): Mr. Ross filed this action in state court on August 10, 2026.
- *Ross v. Smitley*, No. 26A-GU-02022 (Ind. Ct. App.): Mr. Ross filed an appeal in this case on July 29, 2026, regarding a guardianship case.
- *State of Indiana ex rel. Ross v. Marion Superior Court 12 et al.*, No. 26S-OR-00050 (Ind.): In an 11-page handwritten filing, Mr. Ross sought a writ of mandamus from the Indiana Supreme Court against a state trial judge.

The Court screened Mr. Ross's complaint in this case on October 28, 2025. Dkt. 12. In that order, the Court directed Defendants to file a response to Mr. Ross's preliminary injunction when they filed an answer to the complaint. *Id.* at 8. Defendants did not initially appear and waive service, so on January 6, 2026, the Court issued a second notice and opportunity to waive service, and Defendants appeared shortly thereafter. Dkts. 17, 20, 21. On March 9, 2026, Defendants filed an answer but failed to respond to the preliminary injunction motion. Dkt. 26. The magistrate judge ordered Defendants to respond within 14 days. Dkt. 27. Mr. Ross filed a motion for reconsideration of that order, requesting that Defendants not be allowed to file a response. Dkt. 28. On March

26, Defendants filed their response to the preliminary injunction motion, and Mr. Ross has filed a reply. Dkts. 34, 51.

## II. Discussion

### A. Reconsideration

District courts have broad discretion in managing their dockets, including determining when or whether to strictly enforce local rules and orders. *See Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1024 (7th Cir. 2021). Moreover, courts prefer deciding cases on the merits and will excuse failures to strictly comply with procedural rules if possible. *See Atkins v. Gilbert*, 52 F.4th 359, 361 (7th Cir. 2022). That is especially true for a motion for preliminary injunction governed by the Prison Litigation Reform Act, which imposes additional requirements for injunctive relief that would affect prison operations. *See* 18 U.S.C. § 3626(a).

Here, Defendants' initial failure to respond to the preliminary injunction resulted in only a 17-day delay in their filing of a response. The magistrate judge also gave Mr. Ross adequate time to file a reply brief, and he did so. The order directing Defendants to expeditiously respond to the preliminary injunction motion in this situation does not warrant reconsideration, especially as the motion for preliminary injunction is now fully briefed. Mr. Ross's motion to reconsider is **DENIED**. Dkt. [28].

### B. Preliminary Injunction

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*,

796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). If the plaintiff meets these threshold requirements, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id.*

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Also, in the PLRA, "Congress mandates that any injunction with respect to prison conditions extend no further than necessary to correct the violation, be narrowly drawn, and be the least intrusive means to correct the violation." *Howe v. Hughes*, 74 F.4th 849, 857 (7th Cir. 2023) (vacating injunction that mandated minimum weekly group therapy hours).

The Court concludes that, at this point, Mr. Ross has not shown a likelihood of success on the merits justifying a preliminary injunction, and has not shown that he will suffer irreparable harm without preliminary injunctive relief.

For likelihood of success on the merits, Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). "Four elements must be satisfied to establish a violation of Section 504: (1) the plaintiff must be a handicapped individual as defined by the Act; (2) the plaintiff must be otherwise qualified for participation in the program; (3) the program must receive federal financial assistance; and (4) the plaintiff must have been denied the benefits of the program solely because of his handicap." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 484 (7th Cir. 2019). A Rehabilitation Act claim may be premised on intentional discrimination "or that the defendant failed to afford h[im] a reasonable accommodation for h[is] disability." *Id.*

Mr. Ross has not presented evidence that would plausibly support a claim of intentional discrimination against Mr. Ross because of his disability, so he would have to show that prison officials did not reasonably accommodate his disability. In *Hildreth v. Butler*, 960 F.3d 420 (7th Cir. 2020), the Seventh Circuit addressed whether prison officials provided reasonable accommodations under the ADA[1] for law library access to an inmate with Parkinson's disease who claimed that the disease impacted his ability to draft documents. The Court noted, "[t]he key question here is whether Hildreth, given his disability, was able

[1] Except for slight differences that are irrelevant here, the ADA and RA are "very similar." *Reed*, 915 F.3d at 484.

to draft his legal documents, with or without reasonable accommodations from the prison." *Id.* at 431 (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)). The prison offered an assistant to the inmate to help him draft documents, and the inmate "successfully drafted legal documents and never missed a court deadline." *Id.* "The question is not whether other modifications could have been made . . . but whether the accommodations made were reasonable. We conclude they were." *Id.*

Here, Mr. Ross has been able to litigate and file extensive documents both in this Court and state courts. It appears that he has only one missed deadline in a case before the Indiana Court of Appeals last year, and that his litigation has been unsuccessful because his claims have failed on the merits, not because he missed filing deadlines or was unable to prepare thorough filings. Mr. Ross's handwritten filings in this case and his other cases have been timely, coherent, highly readable, and supported by extensive and appropriate legal citations. "[F]ailing to provide reasonable accommodations constitutes disability discrimination only if those accommodations were necessary to obtain access to the service or program." *Murphy v. Kamphuis*, 858 F. App'x 939, 941 (7th Cir. 2021) (citing *Hildreth*, 960 F.3d at 430-31). "While he undoubtedly expressed his desire for more library time, [Mr. Ross] has not introduced any evidence that he needed that time to prepare legal documents." *Id.* At this juncture, the likelihood of Mr. Ross proving that he has been discriminated against or provided inadequate accommodations for his disability, with respect to law library access or needing a special keyboard to complete legal documents, is low.

For irreparable harm, Mr. Ross has demonstrated his ability to litigate numerous actions in federal and state court and make timely filings in them. He has not presented evidence that he might be more successful in any case if this Court mandates more library access or that prison officials provide him with a special keyboard. "Harm is irreparable if legal remedies are inadequate to cure it . . . . Inadequate 'does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). Mr. Ross also has not shown that an award of monetary damages would be a "seriously deficient" way to address any harm he has suffered. *Id.*

In sum, Mr. Ross has not shown a sufficient likelihood of success on the merits or risk of irreparable harm to justify the "extraordinary" remedy of a preliminary injunction in the form of being provided his requested accommodations for additional law library access at Wabash Valley.

## III. Conclusion

Mr. Ross's motion to reconsider the magistrate judge's order directing Defendants to file a response to his preliminary injunction motion is **DENIED**. Dkt. [28]. The motion for preliminary injunction also is **DENIED**. Dkt. [3].

**SO ORDERED.**

Date: 9/16/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

WILLIAM E. ROSS
863230
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only